IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
Civil Action No. 7:12-140

| | | |
|---|---|---|
| GAIL LIUZZA | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | COMPLAINT |
| | ) | |
| BRYNN MARR HOSPITAL, INC., | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff, Gail Liuzza, by and through the undersigned counsel, states the following:

## PRELIMINARY STATEMENT

1. Gail Liuzza ("Plaintiff" or "Ms. Liuzza"), an individual who is deaf, brings this case against Brynn Marr Hospital, Inc. ("Defendant" or "The Hospital") for failing to provide the interpreter services necessary to ensure effective communication while she was a patient at Brynn Marr Hospital. As a result, Ms. Liuzza was unable to communicate effectively with medical personnel at Brynn Marr Hospital, which deprived her of the ability to fully participate in, and benefit from, her own health care. This lack of effective communication violated section 504 of the Rehabilitation Act of 1973, *as amended*, 29 USC § 794. Ms. Liuzza seeks compensatory damages, attorneys' fees, and costs.

## JURISDICTION

2. Jurisdiction over these claims is invoked pursuant to 28 U.S.C. § 1331.

3. The acts and omissions of Defendant giving rise to this action occurred in Jacksonville, NC, making venue proper in this judicial district pursuant to 28 U.S.C. § 1391(b).

## THE PARTIES

4. Plaintiff, Gail Liuzza, resides at 2 Sheridan Drive, Tobyhanna, PA 18466. During the relevant time, she resided in North Carolina.

5. Defendant, Brynn Marr Hospital, Inc., is an organization that owns, operates, and/or leases a hospital located at 192 Village Drive, Jacksonville, NC 28546.

## FACTUAL ALLEGATIONS

6. Gail Liuzza is deaf. She is substantially limited in the major life activities of hearing and speaking and is an individual with a disability. She uses American Sign Language as her primary means of communication.

7. The events that follow took place over several days. During her stay at Brynn Marr Hospital, Ms. Liuzza was prevented from accessing vital information. As a result of the lack of effective communication, Ms. Liuzza was

unable to fully benefit from Brynn Marr Hospital's services or fully participate in the decision-making process with respect to her own health.

8. Brynn Marr Hospital's February 19, 2011, 11:00 Nursing Progress Report states: "Husband called[,] voices concerns about unable to speak [with] wife . . . hospital do[es] not have video phone . . . ."

9. Throughout her stay, Brynn Marr Hospital failed to provide Ms. Liuzza with access to a videophone or any other telecommunications services for the deaf and/or hard of hearing.

10. As a result of Brynn Marr Hospital's failure to provide the necessary aids and auxiliary telecommunications services, Ms. Liuzza was excluded, denied services, or otherwise treated differently than the other patients at Brynn Marr Hospital with respect to communication with family members.

## February 18, 2011

11. On February 18, 2011, Ms. Liuzza was transferred from Martin General Hospital to Brynn Marr Hospital.

12. According to its website, Brynn Marr Hospital's mission is "to offer caring, effective behavioral health services for children, adolescents, adults and senior adults throughout North Carolina who suffer from mental illness, chemical dependency or developmental disability."

3

13. Upon arrival at Brynn Marr Hospital, Ms. Liuzza wrote on a piece of paper that she needed a qualified sign language interpreter.

14. Brynn Marr Hospital's intake sheet states: "PT WITH DEAFNESS" and "PT WILL NEED INTERPRETER".

15. The entire day, Brynn Marr Hospital did not provide qualified sign language interpreters and instead attempted to communicate through writing notes.

16. Writing notes did not result in effective communication because Ms. Liuzza does not have a strong command of written English. Ms. Liuzza was not able to ask questions or receive information to the same extent as hearing patients.

17. As a result of the lack of qualified sign language interpreters, there was no effective communication between Ms. Liuzza and Brynn Marr Hospital staff on February 18, 2011.

18. As a result of the lack of effective communication, Ms. Liuzza was unable to fully benefit from Brynn Marr Hospital's services or fully participate in the decision-making process with respect to her own health.

## February 19, 2011

19. On February 19, 2011, Ms. Liuzza requested a qualified sign language interpreter.

20. Brynn Marr Hospital did not provide qualified sign language interpreters for the entire day.

21. Brynn Marr Hospital staff instead attempted to communicate with Ms. Liuzza through writing notes.

22. Writing notes did not result in effective communication because Ms. Liuzza does not have a strong command of written English.

23. Brynn Marr Hospital's Group Therapy Notes state that Ms. Liuzza viewed a video "about co-occurring disorders to increase understanding of relationship of compulsive behaviors and mental disorders . . . Client not able to hear video."

24. The above-mentioned video was not captioned, and Brynn Marr Hospital did not provide Ms. Liuzza with an American Sign Language interpreter or any other auxiliary aid or service. As a result, Ms. Liuzza was unable to access the aural information provided in the video.

25. Before and after the video presentation, a discussion among patients and Brynn Marr Hospital staff took place.

26. Brynn Marr Hospital did not provide an American Sign Language interpreter or any other auxiliary aid or service, and Ms. Liuzza was unable to participate in, or benefit from, the discussion.

27. In the afternoon, Ms. Liuzza attended a group therapy session with patients and members of Brynn Marr Hospital staff that lasted approximately one hour.

28. Brynn Marr Hospital did not provide an American Sign Language interpreter or any other auxiliary aid or service, and Ms. Liuzza was unable to participate in, or benefit from, the group therapy discussion.

29. In the evening, Ms. Liuzza attended a group therapy session with patients and members of Brynn Marr Hospital staff that lasted approximately one hour.

30. Brynn Marr Hospital did not provide an American Sign Language interpreter or any other auxiliary aid or service, and Ms. Liuzza was unable to participate in, or benefit from, the group therapy discussion.

31. Brynn Marr Hospital's 1:00 a.m. Progress Notes state: "Client communicates [with] staff via writing and vice versa. Isolative."

32. As a result of the lack of effective communication, Ms. Liuzza was unable to fully benefit from Brynn Marr Hospital's services or fully participate in the decision-making process with respect to her own health.

## February 20, 2011

33. On February 20, 2011, Brynn Marr Hospital provided interpreter services for only a limited time during the morning.

34. In the afternoon, Ms. Liuzza attended a group therapy session with patients and members of Brynn Marr Hospital staff that lasted approximately one hour.

35. Brynn Marr Hospital did not provide an American Sign Language interpreter or any other auxiliary aid or service for the afternoon group therapy session, and Ms. Liuzza was unable to participate in, or benefit from, the discussion.

36. Brynn Marr Hospital's 15:00 Psychosocial Assessment states: "Limited ability to Read/Write the English language . . . Primary Language ASL . . . Secondary language is English."

37. Brynn Marr Hospital's 15:40 Nursing Progress Notes state: "Pt displaying flat affect and depressed mood. Pt was very tearful . . . . Pt c/o being 'scared' and 'lonely' R/T not being able to communicate [with] peers or staff appropriately. Pt displayed slightly improved mood during time interpreter was available."

38. In the evening, Ms. Liuzza attended a group therapy session with patients and members of Brynn Marr Hospital staff that lasted approximately one hour.

39. Brynn Marr Hospital did not provide an American Sign Language interpreter or any other auxiliary aid or service, and Ms. Liuzza was unable to participate in, or benefit from, the discussion.

### February 21, 2011

40. On February 21, 2011, Brynn Marr Hospital provided interpreter services for only a limited time during the morning.

41. In the evening, Ms. Liuzza attended a group therapy session with patients and members of Brynn Marr Hospital staff that lasted approximately one hour.

42. Brynn Marr Hospital did not provide an American Sign Language interpreter or any other auxiliary aid or service, and Ms. Liuzza was unable to participate in, or benefit from, the discussion.

### February 22, 2011

43. On February 22, 2011, Brynn Marr Hospital provided interpreter services for only a limited time during the morning.

44. In the afternoon, Ms. Liuzza was invited to participate in a group therapy session. A member of the Brynn Marr Hospital staff gestured to Ms. Liuzza that she should follow the group to a room.

45. When Ms. Liuzza realized that Brynn Marr Hospital would not provide an American Sign Language Interpreter, Ms. Liuzza was not able to participate in, or benefit from, the group therapy session.

46. Later that afternoon, Ms. Liuzza was discharged from Brynn Marr Hospital.

47. Brynn Marr Hospital records state in two separate documents that Ms. Liuzza's target date for discharge was February 26, 2011 and February 28, 2011, respectively.

48. Ms. Liuzza was discharged four days and six days, respectively, before her "target discharge date."

## COUNT I

## SECTION 504 OF THE REHABILITATION ACT OF 1973

49. Plaintiff repeats and re-alleges paragraphs 1 through 48 in support of this claim.

50. Ms. Liuzza is a qualified individual with a disability under section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

51. Defendant is a recipient of federal financial assistance, including but not limited to its acceptance of Medicare and Medicaid.

52. Defendant intentionally discriminated against Ms. Liuzza on the basis of her disability by denying Ms. Liuzza auxiliary aids and services necessary to ensure effective communication between Ms. Liuzza and Defendant, equal access, and an equal opportunity to participate in and benefit from Defendant's health care services in violation of section 504 of the Rehabilitation Act.

# **RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court provide the following relief:

a. Award compensatory damages;

b. Award reasonable costs and attorneys' fees; and

c. Award any and all other relief that may be necessary and appropriate.

Plaintiff hereby demands that this action be tried before a jury.

/s/Robert M. Elliot
Robert M. Elliot
N.C. Bar No. 7709
ELLIOT PISHKO MORGAN, P.A.
426 Old Salem Road
Winston-Salem, North Carolina 27101
Telephone: (336) 724-2828
Fax No. (336) 724-3335

*Attorney for Plaintiff, Gail Liuzza*